IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HASKELL OFFICE LLC,** | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **MOORECO, INC.,** | : | |
| *Defendant.* | : | NO. 21-02533 |

## MEMORANDUM

**Kenney, J.**                                                                  **May 19, 2022**

Before the Court is Plaintiff Haskell Office LLC's ("Haskell") Motion to Dismiss for Lack of Jurisdiction Defendant MooreCo, Inc's ("MooreCo") Counterclaim One. ECF No. 34.

### I.  BACKGROUND

Haskell is a manufacturer of office furniture and education space accessories and solutions. ECF No. 27 ¶ 9. Haskell currently offers products in its Echo™ line of "educational furniture," including the Echo™ whiteboard at the center of this dispute. *Id.* ¶ 11, 13. Haskell alleges that it owns several patents on its Echo™ line products and a valid trade dress for the whiteboard design. *Id.* ¶ 13, 14. According to Haskell, MooreCo operates in a similar space and is a direct competitor of Haskell. MooreCo produces and sells the Compass™ whiteboard (aka the Compass™ Porcelain Steel Lapboard), which is allegedly infringing on the trade dress patent attributed to Haskell's Echo™ whiteboard. ECF No. 36 at 1.

On March 14, 2022, Haskell filed its Second Amended Complaint, stating claims for false designation of origin, willful trade dress infringement, and unfair competition under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and Pennsylvania common law, as well as for

1

breach of the parties' confidentiality agreement. ECF No. 27 ¶ 1. Haskell describes in detail the allegedly "distinctive ornamental features" that comprise its Echo™ whiteboard trade dress. *Id*. ¶¶ 18-20.  The design features, including shapes, dimensions, frames, and style of the opening of the whiteboard were all chosen by the Haskell design team and are not essential to the functionality of the product. *Id.* ¶ 20. Haskell notes that "there is a design patent associated with Haskell's Echo™ whiteboard; however, it is not the subject of Haskell's infringement claims in this action." *Id.* ¶ 17.

To support its claim for breach of confidentiality agreement, Haskell alleges that MooreCo explored the potential acquisition of Haskell in the fall of 2018. *Id.* ¶ 27. During conversations about an acquisition, MooreCo purportedly signed a confidentiality agreement with Haskell as the intended beneficiary of the agreement. *Id.* Haskell proceeded to share "a plethora of confidential" information with MooreCo, including sales and financial information relating to the Echo™ whiteboard and its trade dress. *Id.* ¶ 28. Haskell now asserts that MooreCo later violated the confidentiality agreement and used the protected whiteboard design for its own financial gain. *Id.* ¶ 30.

To support its other claims, Haskell describes MooreCo's infringing use of the Echo™ whiteboard at an industry tradeshow in October 2019. *Id.* ¶¶ 31-36. Haskell sent a cease and desist letter in November 2019, demanding that MooreCo "stop promoting, marketing, advertising, and/or selling its Echo™ whiteboard and confusingly similar variations thereof, and stop infringing its intellectual property." *Id.* ¶ 37. Haskell alleges that MooreCo continues to sell a whiteboard infringing upon the Echo™ whiteboard trade dress. *Id.* ¶¶ 38-44.

On March 28, 2022, MooreCo filed its Answer to the Second Amended Complaint, which included Counterclaim One, requesting declaration of non-infringement by MooreCo of

the D593 patent[1] pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 271. ECF No. 28 ¶¶ 30-34.[2] In Counterclaim One, MooreCo references a letter Haskell sent to the CEO of MooreCo, Greg Moore, on November 5, 2019, notifying MooreCo that its Compass™ whiteboard "may likely infringe Haskell Office's design patent" and lists the D593 patent specifically. ECF No. 28-2 at 2. Haskell requests that MooreCo "discontinue the use of the current design" and any future production use a design "less similar to that of Haskell Office's patented design." *Id.* at 2-3. On November 22, 2019, MooreCo responded to the letter, stating that "there are multiple differences in design and ornamental appearance" between the two products and asserting that MooreCo's whiteboard does not infringe on the D593 patent. ECF No. 28-3 at 2; ECF No. 28 ¶ 27. There is no further communication between either party regarding the D593 patent for at least two years.

Haskell initiated the present action in June 2021, sending a package containing the complaint and a cover letter asking MooreCo to cease infringement of Haskell's intellectual property rights associated with the Echo™ whiteboard. ECF No. 28 ¶ 28. In Counterclaim One, MooreCo claims that the D593 patent is part of the intellectual property rights that Haskell is asserting and that there exists "substantial controversy between Haskell and Moore[C]o having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment with respect to the D593 patent." ECF No. 28.

On April 12, 2022, MooreCo sent a demand to Haskell requesting a covenant not to sue under the D593 patent. ECF No. 36 at 17. On April 14, 2022, the parties held a meet and confer by telephone, wherein Haskell refused to sign a covenant not to sue because Haskell deemed it

---

[1] U.S. Design Patent No. 787,593 ("the D593 patent").
[2] MooreCo introduced the Compass™ Porcelain Steel Lapboards in late 2019 or early 2020. *Id.* ¶ 10. MooreCo applied for and obtained a design patent, the D431 patent, for its Compass™ Porcelain Steel Lapboards, which MooreCo claims covers the ornamental design used. MooreCo filed for the design patent on November 29, 2019 and it was issued on March 9, 2021 as U.S. Patent No. D912,431 ("the D431 patent").

3

unnecessary as the design patent is not at issue in this litigation. ECF No. 35 fn. 1; ECF No. 36 at 11.

On April 18, 2022, Haskell filed its Motion to Dismiss Counterclaim One for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 35. Haskell asserts that the D593 patent is unrelated to this litigation and there exists no actual or imminent controversy with respect to Haskell's design patent. *Id*. at 2. Haskell insists that it "never formally accused MooreCo of Design Patent infringement or threatened MooreCo with a Design Patent infringement lawsuit." *Id.* at 3. While Haskell agrees that the November 2019 letter stated MooreCo's product "may likely infringe" Haskell's design patent, MooreCo did not file a declaratory judgment following receipt of the letter, waiting instead over two years to file Counterclaim One in this action relating to a different patent. *Id*. at 4.

On May 2, 2022, MooreCo filed its Response in Opposition to the Motion to Dismiss. ECF No. 36.³ MooreCo again identifies the November 2019 letter from Haskell as the impetus for its Counterclaim One. Haskell requested that MooreCo "discontinue the use of the current design" due to the D593 design patent. *Id*. at 10. MooreCo alleges that Haskell "reiterated its infringement accusations" on June 7, 2021 through a letter sent to MooreCo that referenced the prior November 2019 correspondence. *Id*. at 11. MooreCo notes that the June 2021 letter is the first mention of Haskell's alleged trade dress right and the November 2019 letter makes no mention of trade dress rights associated with Haskell's Echo™ whiteboard. ECF No. 36. MooreCo alleges, even so, that the June 2021 letter is a "continuation of [Haskell's] earlier design patent infringement accusation." *Id*. at 15. MooreCo further alleges that Haskell's "refusal to consider a covenant not to sue" demonstrates a "clear intent to keep a patent infringement suit

---

³ MooreCo includes irrelevant accusations that Haskell infringed patents held by non-party Steelcase, which the Court has no need to address.

4

in its back pocket." *Id*. at 17. On May 6, 2022, MooreCo filed its Supplemental Memorandum in Response to Plaintiff's Motion to Dismiss responding directly to two cases cited in Plaintiff's Amended Memorandum. ECF No. 37.

On May 11, 2022, Haskell filed its Reply in Support of its Motion to Dismiss MooreCo's Counterclaim One. Haskell contends that MooreCo "intentionally misconstrues the June 2021 correspondence." ECF No. 38 at 1. The June 2021 letter, which MooreCo failed to attach to its Response, merely notifies MooreCo of this suit and attaches Haskell's Complaint for trade dress infringement and unfair competition. *Id*. at 4. The June 2021 letter, according to Haskell, does not mention the design patent. *Id*. at 5. Haskell also reiterates that the November 2019 letter does not provide sufficient immediacy to satisfy subject matter jurisdiction. *Id*. at 4. Finally, Haskell contends that its refusal to sign a covenant not to sue is not evidence of an actual case or controversy or an immediate threat of suit. *Id*. at 6.

## II.  LEGAL STANDARD

The Declaratory Judgment Act states, in relevant part: "In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2000). "The Declaratory Judgment Act is not an independent basis for subject matter jurisdiction."[4] *Prasco, LLC v. Medicis Pharm. Corp.,* 537 F.3d 1329, 1335 (Fed. Cir. 2008) (citation omitted). The Declaratory Judgment Act requires "a case of actual controversy" similar to the

---

[4] "Subject matter jurisdiction over actions for a declaratory judgment of patent non-infringement comes from 28 U.S.C. § 1338." *Prasco, LLC v. Medicis Pharm. Corp*., 537 F.3d 1329, 1335 fn. 3 (Fed. Cir. 2008).

Constitutional requirement of any case and controversy that is justiciable under Article III. *Id*. "For there to be a case or controversy under Article III, the dispute must be 'definite and concrete, touching the legal relations of parties having adverse legal interests,' 'real and substantial,' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Prasco*, 537 F.3d at 1335–36 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)). Regarding Declaratory Judgment Act claims, "there is no bright-line rule for determining whether an action satisfies the case or controversy requirement." *Prasco*, 537 F.3d at 1336; *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008) ("There is, however, no facile, all-purpose standard to police the line between declaratory judgment actions which satisfy the case or controversy requirement and those that do not.").

The Supreme Court adopted an "all the circumstances" test, evaluating "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 118 (citation and quotation marks omitted).[5] The Federal Circuit has since adopted the "all the circumstances" test as well. *See Teva Pharm.*, 482 F.3d at 1339. However, "[*MedImmune*] did not change the bedrock rule that a case or

---

[5] "[B]ecause the Supreme Court in *MedImmune* cautioned that our declaratory judgment reasonable-apprehension-of-suit test contradict[s] and conflicts with its precedent, these Federal Circuit tests have been overruled by ... an intervening ... Supreme Court decision." *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007) (internal citation and quotation marks omitted). While the prior two-prong test is no longer the applicable standard for declaratory judgment actions because the Supreme Court in *MedImmune* found the reasonable apprehension of suit test to be unduly restrictive, 549 U.S. at 133 n. 11, proving a reasonable apprehension of suit is still "one of many ways" under the current "all-the-circumstances test" to establish a justiciable controversy. *Caraco Pharm. Lab'ys, Ltd. v. Forest Lab'ys, Inc.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008); *Prasco,* 537 F.3d at 1336 ([The Supreme Court] did not completely do away with the relevance of a reasonable apprehension of suit."). Thus, lack of reasonable apprehension of suit may still be a consideration under the totality of the circumstances to show a lack of case or controversy, though it is by no means dispositive.

controversy must be based on a *real* and *immediate* injury or threat of future injury that is *caused by the defendants*—an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Prasco,* 537 F.3d at 1339 (emphasis in original). "The specific facts of each case must be considered, in deciding whether a declaratory action is warranted." *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010).

As Haskell raises a factual challenge under Rule 12(b)(1) to the subject matter jurisdiction of Counterclaim One for declaratory judgment, the burden of proof lies with MooreCo and no presumptive truthfulness attaches to the allegations of jurisdictional facts. *See Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997). The Supreme Court has stated "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 289 (1995).

**III.   DISCUSSION**

Considering the totality of the circumstances, MooreCo has not alleged a real controversy of sufficient "immediacy and reality" to create a justiciable controversy. *Prasco*, 537 F.3d at 1338.

First, MooreCo relies heavily on the letter dated November 5, 2019, wherein Haskell notifies MooreCo that its product may infringe on Haskell's design patent, the D593 patent. The letter makes a request for MooreCo to cease future production of its similar product and offers to discuss the matter with MooreCo's counsel. There is no threat of litigation or future action within the letter. In response, MooreCo sends a letter refusing to cease production of its possibly infringing product. It does not appear that either party engaged in any additional correspondence relating to the design patent for at least two years.

7

There is no need for judicial intervention relating to a letter discussing possible infringement that was exchanged by the parties over two years ago. *See Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377 (Fed. Cir. 2010) (holding that patentee employees' statements that patentee company would "act aggressively" to protect its rights and would sue "100% no doubt about it" did not produce a real and immediate controversy). As no further correspondence was exchanged or demands made by Haskell regarding the D593 patent, it does not comport that following that two-year time frame MooreCo would suddenly have a real and immediate injury or threat of future injury caused by the November 2019 letter sent by Haskell. MooreCo cannot now allege a subjective or speculative fear of future harm based on a stale exchange of just two letters between the parties. *Prasco,* 537 F.3d at 1338 ("a fear of future harm that is only subjective is not an injury or threat of injury caused by the defendant that can be the basis of an Article III case or controversy.").

The exchange of two letters, without additional action taken by either party for years, does not rise to the level of substantial controversy.[6] *See e.g.*, *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008) (finding actual controversy where patentee sent multiple letters alleging patent infringement and suggesting licensing, patentee sued other major manufacturers of the same product under the same patent, and patentee filed an infringement suit the day after the declaratory action was filed); *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,

---

[6] MooreCo cites to a case where a brief exchange of letters established jurisdiction, however those circumstances are distinguishable from the circumstances here. *See Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1360 (Fed. Cir. 2009). In *HP*, the company raised the idea of a declaratory judgment action approximately two weeks after receiving notice it may have an issue with a patent. Then it filed the declaratory judgment suit just over a week after the patentee refused to agree to 120 period of non-suit. Here, as noted below, the timing of MooreCo's Counterclaim One weighs against a finding of immediacy. Furthermore, MooreCo did not initiate a declaratory judgment suit to create this action. Haskell clearly defined what issues it wanted to pursue by initiating suit on trade dress infringement. It appears to the Court that MooreCo is merely using Counterclaim One as a tool to create controversy relating to a patent issue that was never pursued by Haskell.

497 F.3d 1271 (Fed. Cir. 2007) (finding an actual controversy existed between parties that exchanged extensive correspondence over many years explicitly accusing companies of patent infringement, engaged in licensing negotiations, and where patentee attempted to collect owed royalties); *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372 (Fed.Cir.2007) (finding an actual controversy where patentee met with other party and presented a detailed analysis of how the products infringed on the patents and engaged in licensing negotiations). The repercussions for allowing subject matter jurisdiction of declaratory judgment claims with such thin adversarial engagement would be significant.

Second, MooreCo alleges that Haskell repeated its accusation of design patent infringement in June 2021, which is a misleading assertion. ECF No. 36. Haskell notified MooreCo that it must "cease its infringement of Haskell's intellectual property rights associated with its Echo™ whiteboards." ECF No. 38-2 at 2. Haskell references the November 2019 letter but does not mention the D593 design patent in either the cover letter or the accompanying complaint. Haskell's decision to initiate an infringement suit on another intellectual property right does not automatically provide jurisdiction for other patents related to that allegedly infringing product. *See Prasco,* 537 F.3d at 1338 ("*MedImmune* does not change our long-standing rule that the existence of a patent is not sufficient to establish declaratory judgment jurisdiction.").

Considering the totality of the correspondence exchanged between the parties, it appears to the Court that MooreCo does not meet its burden of showing the necessary immediacy or actual controversy to uphold Counterclaim One. MooreCo makes no mention of the D593 patent in its December 6, 2021 Answer (ECF No. 13), nor is there any evidence it was discussed when the parties conferred on December 29, 2021 or in MooreCo's summary of the matter submitted

9

on January 3, 2022 in the Report of Rule 26(f) Meeting (ECF No. 17). MooreCo waited nearly two and a half years following receipt of the November 2019 letter and more than nine months following receipt of the June 2021 letter to even mention an issue related to the D593 patent. The delayed timing of this declaratory judgment claim, during which time Haskell made no accusations of infringement of this particular patent, leads the Court to believe this sudden issue has more to do with litigation strategy than an actual controversy or a real or immediate need for relief. *See Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606, 610 (D. Del. 2009) (finding plaintiff failed to show an infringement suit was imminent where the circumstances supporting the declaratory judgement complaint existed for years and plaintiff was able to delay action); *Citizen Elecs. Co. v. Osram GmbH*, 377 F.Supp.2d 149, 157 (D.D.C. 2005) (finding failure of party to "take prompt action in the face of what it claims to be a real threat of an infringement suit" is a factor to determine sufficient immediacy of declaratory judgment action).

Third, Haskell recently refused to agree to a covenant not to sue, which MooreCo asserts is evidence of a real and immediate controversy. ECF No. 36. Yet the timing of MooreCo's demand for this covenant is problematic for establishing jurisdiction. MooreCo filed Counterclaim One two weeks before demanding a covenant not to sue and later events do not give rise to jurisdiction; "the proper focus in determining jurisdiction are the facts existing at the time the complaint *under consideration* was filed." *Prasco,* 537 F.3d at 1337 (citation and quotation marks omitted) (emphasis in original).[7] Furthermore, Haskell's refusal to sign a covenant not to sue on the D593 patent, while relevant, is not dispositive. *See id.* at 1341 ("A patentee has no obligation to spend the time and money to test a competitors' product nor to make a definitive determination, at the time and place of the competitors' choosing, that it will

---

[7] Even when considering Haskell's refusal to sign the covenant not to sue, the Court still concludes there is no subject matter jurisdiction.

never bring an infringement suit. And the patentee's silence does not alone make an infringement action or other interference with the plaintiff's business imminent.").

Finally, it is true that both the trade dress and design patent involve the same products and the same parties, but the Court disagrees with MooreCo that these patents involve the same issues. ECF No. 36 at 15, 20-21. MooreCo refers to these issues as "largely overlapping[.]" *Id.* at 20. The cases cited by MooreCo, however, do not directly support its contention. While the cited language points to the need for similarity between the product and design to find infringement in either case, it does not indicate that the two property rights are evaluated in the same way by the courts. Trade dress rights are a subset of trademark law that protect the visual characteristics of a product or its packaging that identify the source of the product to consumers. When the packaging is integrated into the product itself, like in this case, the design and shape of the product itself is protected by trade dress. As Haskell mentioned, trade dress does not extend to functional features. Thus, the purpose of trade dress is to prevent consumer confusion and specifically protect brands and the reputation of the brand. While design patent is also related to the visual characteristics of an object, it is not reliant on consumer association with the product. The two rights exist under different legal frameworks, have different exclusivity rules, and would require distinct factual analyses. The applicable tests for infringement of trade dress and design patent are also distinguishable. In general, trade dress requires an analysis of consumer or market impact of a design. Design patent requires a comparison of the product to the patent itself. Therefore, allowing Counterclaim One to proceed would greatly expand the scope of this litigation and alter Plaintiff's allegations of infringement. It is the Court's obligation to ensure that Plaintiff can initiate an infringement action on one patent without being forced to defend other patents relating to the same product. ECF No. 38 at 5 ("it is Haskell's prerogative–as the

owner of these totally distinct forms of intellectual property–to decide if infringement is taking place and, if so, whether to act on such infringement.").

## IV. CONCLUSION

Based on the foregoing reasons, the motion to dismiss is granted and Counterclaim One dismissed.

BY THE COURT:

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**